UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

RASHAD ABDUL-MATIN

*Plaintiff*,

-against-

CORRECTION OFFICER JOSHUA BARTLETT, CORRECTION OFFICER SHANE BOWER, SERGEANT FRANCIS CHANDLER, SERGEANT WILLIAM DUNDON, DEPUTY COMMISSIONER OF CORRECTIONAL FACILITIES MICHAEL D'AMORE, SERGEANT DAVID FERRONE, CORRECTION OFFICER MICHAEL GERHARDT, SUPERINTENDENT BRYAN HILTON, CORRECTIONAL OFFICER MICHAEL G. JONES, CORRECTION OFFICER CRAIG KLEMICK, CORRECTION OFFICER JONAH LEVI, CORRECTION OFFICER STEVEN MACK, COMMISSIONER DANIEL F. MARTUSCELLO, III, CORRECTION OFFICER SCOTT MONNAT, CORRECTION OFFICER CHRISTOPHER PERRI, CORRECTION OFFICER BRETT RADLEY, SERGEANT RYAN RUSSELL, CORRECTION OFFICER TRISTAN SHEPPARD, and JOHN AND JANE DOES 1-20, as yet identified individuals,

*Defendants*.

Civil Case No. 9:26-cv-1551 (BKS/ML)

**MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT LEVI'S MOTION TO DISMISS**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..... 1

STATEMENT OF FACTS ..... 1

LEGAL STANDARD ..... 3

ARGUMENT ..... 4

I. The Motion to Dismiss Should Be Denied Because The Complaint Provides Levi Adequate Notice of the Claims Asserted Against Him. ..... 4

II. The Motion to Dismiss Should Be Denied Because Mr. Abdul-Matin Has Adequately Alleged Personal Involvement By Levi. ..... 6

A. Mr. Abdul-Matin Has Adequately Alleged Levi's Personal Involvement in an Excessive Use of Force. ..... 7

B. Mr. Abdul-Matin Has Adequately Alleged Levi's Personal Involvement in a Conspiracy to Violate His Civil Rights. ..... 10

CONCLUSION ..... 12

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Allaire Corp. v. Okumus*, 433 F.3d 248 (2d Cir. 2006) ........ 3

*Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994)........ 7, 8

*Atuahene v. City of Hartford*, 10 Fed.App'x. 33 (2d Cir. 2001)........ 4

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 3

*Blyden v. Mancusi*, 186 F.3d 252 (2d Cir. 1999) ........ 7

*Bryant v. Monroe County*, No. 19-CV-6474 CJS,
2022 WL 119184 (W.D.N.Y. Jan. 12, 2022) ........ 4

*Case v. City of N.Y.*, 233 F.Supp.3d 372 (S.D.N.Y. 2017) ........ 6

*Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018) ........ 3

*Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353 (2d Cir. 2013) ........ 3

*Farmer v. Brennan*, 511 U.S. 825 (1994) ........ 4

*Ferro v. Railway Express Agency, Inc.*, 296 F.2d 847 (2d Cir. 1961)........ 4

*Figueroa v. Mazza*, 825 F.3d 89 (2d Cir. 2016) ........ 8

*Goonewardena v. Spinelli*, No. 15-CV-5239 (MKB) (ST),
2021 WL 61876 (E.D.N.Y. Jan. 7, 2021) ........ 6

*Griffin v. Crippen*, 193 F.3d 89 (2d Cir. 1999)........ 7

*Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013)........ 6

*Harrell v. N.Y. State Dep't of Corr. & Cmty. Supervision*,
No. 15-CV-7065(RA), 2019 WL 3821229 (S.D.N.Y. Aug. 14, 2019)........ 5

*Hudson v. McMillian*, 503 U.S. 1 (1992)........ 7

*In re NYSE Specialists Sec. Litig.*, 503 F.3d 89 (2d Cir. 2007) ........ 3

*Jeffreys v. Rossi*, 275 F.Supp.2d 463 (S.D.N.Y. 2003)........ 5

*Messina v. Mazzeo*, 854 F.Supp. 116 (E.D.N.Y. 1994) ........ 5

*O'Neill v. Krzeminski*, 839 F.2d 9 (2d Cir. 1988) .............................................................. 8

*Pangburn v. Culbertson*, 200 F.3d 65 (2d Cir. 1999) ........................................................... 10

*Provost v. City of Newburgh*, 262 F.3d 146 (2d Cir. 2001) ..................................................... 6

*Rhodes v. Chapman*, 452 U.S. 337 (1981) ........................................................................... 4

*Romer v. Morgenthau*, 119 F.Supp.2d 346 (S.D.N.Y. 2000) ................................................ 10

*Stevenson v. N.Y. State Dep't of Corr. & Cmty. Supervision*,
No. 1:21-cv-355, 2022 WL 179768 (W.D.N.Y. Jan. 20, 2022) ........................................ 5

*Vesterhalt v. City of New York*, 667 F.Supp.2d 292 (S.D.N.Y. 2009) ........................................... 5

*Whitley v. Albers*, 475 U.S. 312 (1986) .............................................................................. 7

*Wright v. Goord*, 554 F.3d 255 (2d Cir. 2009) ..................................................................... 7

Plaintiff submits this memorandum of law in opposition to Defendant Jonah Levi's motion to dismiss.

## PRELIMINARY STATEMENT

This case results from the brutal and unprovoked attack on Rashad Abdul-Matin by a gang of correctional staff at Mid-State Correctional Facility ("Mid-State") on February 27, 2025. Defendant Jonah Levi, formerly a correction officer at Mid-State, moves to dismiss Plaintiff's complaint on the grounds that, because he is named along with a group of several other current and former employees of the New York State Department of Corrections and Community Supervision ("DOCCS") who participated in the attack on Mr. Abdul-Matin, he should be dismissed from the action. Levi's arguments are legally meritless. Levi is liable for his participation in the attack on Mr. Abdul-Matin by virtue of his presence from the outset of this incident, his knowledge that the use of excessive force was illegal, his failure to intervene to prevent the use of excessive force, and the action he took in furtherance of a conspiracy both to use and to cover up the use of excessive force.

## STATEMENT OF FACTS

On the afternoon of February 27, 2025, Mr. Abdul-Matin was in the dayroom of the 4-H dorm at Mid-State. Compl. ¶ 34. Earlier in the morning, the Correctional Emergency Response Team ("CERT") unit had come to the 4-H dorm and threatened that, if they had to return, they would "take people out." Compl. ¶ 36. Following a request for assistance from the dorm officer later that day, DOCCS staff members including Levi—referred to in the Complaint as the "On-Scene Defendants"—responded to the dayroom and ordered the incarcerated individuals present to return to their rooms for the "count." Compl. ¶¶ 37-38. One or more of the responding On-Scene Defendants were members of the CERT unit. Compl. ¶ 38.

Despite their compliance with this order, Mr. Abdul-Matin and four other individuals were handcuffed and ordered back to the dayroom where they were ordered to lie face down on the floor. Compl. ¶¶ 39-43. The On-Scene Defendants proceeded to remove Mr. Abdul-Matin from the dorm, pushing his face forcefully into the wall of the stairwell knocking off and breaking his glasses along the way, and transport him to the SHU building. Compl. ¶¶ 37-58. On arrival at the SHU building, Mr. Abdul-Matin was escorted to a cell in the strip/frisk room and the handcuffs were removed. Compl. ¶ 58. One or more of the On-Scene Defendants then ordered Mr. Abdul-Matin to face the back wall of the cell and put his hands on the wall, which he did. Compl. ¶ 59. The cell door then opened and one or more of the On-Scene Defendants began to beat Mr. Abdul-Matin, punching him in the head and body. Compl. ¶¶ 60-62. When Mr. Abdul-Matin fell to the floor and curled up in the fetal position in an attempt to protect his face, one or more of the On-Scene Defendants began to kick him. Compl. ¶¶ 63-66. On the pretext of conducting a strip frisk, one or more of the On-Scene Defendants then ordered Mr. Abdul-Matin to remove his clothes and squat. Compl. ¶ 67. Mr. Abdul-Matin complied, and one or more of the On-Scene Defendants kicked him in the genitals and buttocks. Compl. ¶¶ 70-71. One or more of the On-Scene Defendants then ordered Mr. Abdul-Matin to get dressed but resumed punching him as he attempted to comply. Compl. ¶¶ 73-74. The beating only ceased at the conclusion of the pretextual strip frisk. Compl. ¶ 73. Each of the On-Scene Defendants failed to intervene to stop the attack on Mr. Abdul-Matin.

Instead, DOCCS' Office of Special Investigations ("OSI") found that On-Scene Defendants failed to properly utilize their body-worn cameras ("BWCs") as required, failed to report the use of force, lied when asked about the use of force, and wrote a misbehavior report for which a disciplinary hearing was never held. Compl. ¶¶ 93, 101-106. Levi, for his part, instructed another officer present, Correction Officer Mack, to turn off his BWC. Compl. ¶ 103.

As a result of the attack, Mr. Abdul-Matin experienced an injury to his ribs causing a clicking sensation, significant and excruciating pain that continued for weeks and made it difficult for him to sleep, and extreme emotional terror. Compl. ¶¶ 94-96, 386, 395. Though he put in three sick call requests, he was not seen by a medical provider until nearly three weeks after the attack. Compl. ¶¶ 97-98.

At the time of the attack on Mr. Abdul-Matin, Levi was subject to a twelve-month disciplinary evaluation period resulting from an excessive use of force against another incarcerated individual at Mid-State; two days after the attack on Mr. Abdul-Matin, Levi was involved in the killing of Messiah Nantwi at Mid-State. Compl. ¶¶ 248-253, 355-364. Levi was later tried and convicted of manslaughter, gang assault, conspiracy, and filing a false instrument, and sentenced to twenty-five years in prison in connection with the killing of Mr. Nantwi. Compl. ¶ 369.

## LEGAL STANDARD

"To survive a motion to dismiss, a complaint need only provide 'sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Citizens United v. Schneiderman*, 882 F.3d 374, 380 (2d Cir. 2018) (quoting *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013)). In evaluating a motion to dismiss, the Court must accept as true all of the factual allegations contained in the complaint, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007), and draw "all inferences in the light most favorable to the non-moving party," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007). A complaint may not be dismissed "unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts which would entitle him to relief." *Allaire Corp. v. Okumus*, 433 F.3d 248, 250 (2d Cir. 2006) (internal quotation marks and citation omitted).

## ARGUMENT

The Eighth Amendment prohibits the use of excessive physical force by prison officials against incarcerated individuals. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). This is because "[b]eing violently assaulted in prison is simply not 'part of the penalty that criminal offenders pay for their offenses against society.'" *Id.* at 834 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).

In his motion, Levi argues that the Complaint (i) did not give him adequate notice of the claims against him and the grounds on which they rest, and (ii) did not allege that he was personally involved in any constitutional deprivation. For the following reasons, Levi's arguments should be rejected.

### I. THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE THE COMPLAINT PROVIDES LEVI ADEQUATE NOTICE OF THE CLAIMS ASSERTED AGAINST HIM.

Although Federal Rule of Civil Procedure 8 "does not demand that a complaint be a model of clarity or exhaustively present the facts alleged, it requires, at a minimum, that a complaint give each defendant 'fair notice of what the plaintiff's claim is and the ground upon which it rests.'" *Atuahene v. City of Hartford*, 10 Fed.App'x. 33, 34 (2d Cir. 2001) (quoting *Ferro v. Railway Express Agency, Inc.*, 296 F.2d 847, 851 (2d Cir. 1961)).

In cases alleging assaults by a group of correction officers, "courts do not insist that the complaint set forth in detail the actions of each officer where it would be unreasonable to expect the plaintiff to be able to do so." *Bryant v. Monroe County*, No. 19-CV-6474 CJS, 2022 WL 119184, at *10 (W.D.N.Y. Jan. 12, 2022). Rule 8 does not require that a plaintiff "set out a defendant's precise role in the injurious conduct," but only "that defendants are put on notice as to the nature of the allegations against them." *Messina v. Mazzeo*, 854 F.Supp. 116, 126 (E.D.N.Y.

1994); *see also Harrell v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 15-CV-7065(RA), 2019 WL 3821229, at *11 (S.D.N.Y. Aug. 14, 2019). Additionally, "[n]othing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant." *Stevenson v. N.Y. State Dep't of Corr. & Cmty. Supervision*, No. 1:21-cv-355, 2022 WL 179768, at *10 (W.D.N.Y. Jan. 20, 2022) (alteration in original) (citations omitted). Ultimately, at this stage "[a] plaintiff need not establish which officer, among a group of officers, directly participated in the attack and which officer failed to intervene." *Vesterhalt v. City of New York*, 667 F.Supp.2d 292, 297 (S.D.N.Y. 2009) (quoting *Jeffreys v. Rossi*, 275 F.Supp.2d 463, 474 (S.D.N.Y. 2003) (citations omitted).

Here, the Complaint does not rely on group pleading; rather, the Complaint asserts identical claims against each of the On-Scene Defendants. Compl. ¶¶ 373-386. Given the circumstances of the attack on Mr. Abdul-Matin—for instance, that he had his glasses knocked off and broken, that he was ordered at various times to lie face down on the ground or told to face the back wall of a cell, that he was attacked from behind, that he attempted to protect his face as he was punched in the head, and that at least two On-Scene Defendants including Levi impeded investigation into this incident by instructing another On-Scene Defendant to turn off his BWC—it is unreasonable at this stage to expect him to establish which of the On-Scene Defendants directly participated in the attack and which failed to intervene. Compl. ¶¶ 44, 50-51, 59-63, 103. It would be particularly unreasonable to expect Mr. Abdul-Matin to set out Levi's precise role in the injurious conduct at this stage given that the facts support an inference that Levi deliberately sought to hide the nature and extent of his involvement.

Additionally, the claims against Levi and the other On-Scene Defendants—that they conspired to and did in fact use or fail to intervene to prevent the use of excessive force against

Mr. Abdul-Matin during a spree of unchecked violence at the facility beginning in the 4-H dorm and ending in the strip/frisk room of the SHU building at Mid-State on the afternoon of February 27, 2025—are clearly distinguished from the failure to protect claim against supervisors Daniel Martuscello, Michael D'Amore, and Bryan Hilton. Compl. ¶¶ 373-407.

As the Complaint gives Levi fair notice of the claims against him and the grounds on which they rest, Levi's motion to dismiss should be denied.

## II. THE MOTION TO DISMISS SHOULD BE DENIED BECAUSE MR. ABDUL-MATIN HAS ADEQUATELY ALLEGED PERSONAL INVOLVEMENT BY LEVI.

As with all section 1983 claims, to establish a defendant's individual liability, a plaintiff must show "the defendant's personal involvement in the alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir. 2013) (citations omitted). A plaintiff may establish a defendant's personal involvement by demonstrating their direct or indirect participation in the alleged constitutional deprivation. *Provost v. City of Newburgh*, 262 F.3d 146, 154-155 (2d Cir. 2001). "'[D]irect participation' refers to 'personal participation by one who has knowledge of the facts that rendered the conduct illegal,' but also encompasses personal participation that may be considered 'indirect,' 'such as ordering or helping others to do the unlawful acts, rather than doing them him- or herself.'" *Goonewardena v. Spinelli*, No. 15-CV-5239 (MKB) (ST), 2021 WL 61876, at *8 (E.D.N.Y. Jan. 7, 2021) (quoting *Provost,* 262 F.3d at 155); *see also Case v. City of N.Y.*, 233 F.Supp.3d 372, 396-397 (S.D.N.Y. 2017). As outlined in the Complaint and in Sections A and B, *infra*, Levi's personal involvement is adequately alleged as to each count in the Complaint, and his motion to dismiss should be denied.

### A. Mr. Abdul-Matin Has Adequately Alleged Levi's Personal Involvement in an Excessive Use of Force.

The source of the prohibition on the use of excessive physical force by prison officials is the Eighth Amendment's ban on cruel and unusual punishments. An incarcerated individual's constitutional right against cruel and unusual punishment is violated by an "unnecessary and wanton infliction of pain." *Whitley v. Albers*, 475 U.S. 312, 319 (1986) (quotation marks omitted); *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999).

Such a claim has "two components—one subjective, focusing on the defendant's motive for his conduct, and the other objective, focusing on the conduct's effect." *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009) (citing *Hudson v. McMillian*, 503 U.S. 1, 7-8 (1992); *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)). "The subjective component of the claim requires a showing that the defendant 'had the necessary level of culpability, shown by actions characterized by wantonness' in light of the particular circumstances surrounding the challenged conduct." *Wright*, 554 F.3d at 268 (quotation marks omitted). The "wantonness" inquiry, in turn, considers "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6 (quotation marks omitted).

"The objective component . . . focuses on the harm done, in light of 'contemporary standards of decency.'" *Wright*, 554 F.3d at 268 (quoting *Hudson*, 503 U.S. at 8). However, "when prison officials use force to cause harm maliciously and sadistically, 'contemporary standards of decency always are violated.'" *Id.* at 268-69 (quoting *Hudson*, 503 U.S. at 9) (alterations omitted).

Finally, "[i]t is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). A

realistic opportunity to intervene to prevent such a harm is necessary for liability to attach. *Id.* "Liability attaches on the theory that the officer, by failing to intervene, becomes a 'tacit collaborator' in the illegality." *Figueroa v. Mazza*, 825 F.3d 89, 106 (2d Cir. 2016) (quoting *O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988)).

Levi argues in his motion to dismiss that each cause of action fails for lack of personal involvement. However, the allegations in the Complaint briefly summarized in Section I, *supra*, are sufficient to establish that Levi was personally involved, as part of a gang of correctional staff at Mid-State, in the attack on Mr. Abdul-Matin. Compl. ¶¶ 1, 13, 37. Accepting as true all of the factual allegations contained in the Complaint, Levi responded to the 4-H dorm at the outset of this incident and proceeded to participate in conduct that, owing to prior disciplinary action taken against him following a similar incident, he knew to be illegal.[1] Compl. ¶¶ 37, 247-253. Whether he participated directly in the use of excessive force by beating Mr. Abdul-Matin or failed to intervene as other On-Scene Defendants did so, Levi's instruction to Officer Mack to turn off his BWC—in violation of DOCCS' BWC policy—supports an inference that he knew his conduct to be illegal and sought to obscure his own culpability. Compl. ¶ 103, 305-311. Levi's instruction to Officer Mack additionally serves to demonstrate that he did, in fact, have a realistic opportunity to intervene, but that he used that opportunity to further the conspiracy to violate Mr. Abdul-Matin's civil rights rather than intervene to interrupt it. This incident went on for long enough for those involved to travel from the 4-H dorm to the strip/frisk room in the SHU building, and for long enough for Mr. Abdul-Matin to remove his clothes and get dressed again as the On-Scene Defendants beat him during a pretextual strip frisk, affording Levi ample opportunity to intervene.

[1] As noted above, at the time of this incident, Levi was subject to a twelve-month disciplinary evaluation period resulting from his involvement in a prior excessive use of force.

Furthermore, the force applied by the On-Scene Defendants cannot be construed as a good faith effort to maintain or restore discipline as Mr. Abdul-Matin was unarmed, submitted to being handcuffed, was isolated in a cell in the strip/frisk room, posed no security risk, and complied with the orders DOCCS staff issued to him even as they beat him. Compl. ¶¶ 38-39, 41-42, 44-45, 58-59, 67-68, 73-74, 377. The force used by the On-Scene Defendants in the attack on Mr. Abdul-Matin served only to maliciously and sadistically cause harm and served no legitimate penological or government interest; contemporary standards of decency find no place for punching or kicking as part of any legitimate search procedure. Compl. ¶¶ 58-76.

In his motion to dismiss, Levi presumes that he is named as one of the On-Scene Defendants in the Complaint "because of the extensive media coverage [his] unrelated criminal case generated." Levi's Mot. to Dismiss at 7. What he leaves out is that this "unrelated criminal case" resulted from his involvement in the killing of Mr. Nantwi in an incident remarkably similar to the attack on Mr. Abdul-Matin only two days prior. Compl. ¶ 355. As in the attack on Mr. Abdul-Matin, Levi and several other On-Scene Defendants named in the Complaint were accused of involvement in a use of excessive force against Mr. Nantwi, of failing to properly utilize required BWCs, and of engaging in a cover up. Compl. ¶¶ 355-364. Levi was later tried and convicted of manslaughter, gang assault, conspiracy, and filing a false instrument, and sentenced to twenty-five years in prison in connection with the killing of Mr. Nantwi. Compl. ¶ 369. Facts tying Levi to a series of incidents involving similar circumstances, occurring at the same facility, involving several of the same participants, over the course of only three days support an inference that he was personally involved in the attack on Mr. Abdul-Matin and that force was used only to maliciously and sadistically cause harm. Compl. ¶¶ 349-363.

Finally, as discussed in Section I, *supra*, at this stage Mr. Abdul-Matin need not establish which On-Scene Defendants directly participated in the attack and which failed to intervene as the Complaint gives each defendant, including Levi, fair notice of the claims against him and the grounds on which they rest.

By virtue of his knowledge that his conduct was illegal and his participation or assistance to others engaging in illegal conduct, Levi was personally involved in the use of excessive force against Mr. Abdul-Matin.

### B. Mr. Abdul-Matin Has Adequately Alleged Levi's Personal Involvement in a Conspiracy to Violate His Civil Rights.

To prove a conspiracy under § 1983 "a plaintiff must show: (1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999) (citations omitted). The Second Circuit has recognized that, while conclusory allegations of a conspiracy are insufficient, "'conspiracies are by their very nature secretive operations,' and may have to be proven by circumstantial, rather than direct, evidence." *Id.* To survive a motion to dismiss, a plaintiff need only "provide some factual basis supporting a meeting of the minds, such as that defendants entered into an agreement, express or tacit, to achieve the unlawful end" along with "some details of time and place and the alleged effects of the conspiracy." *Romer v. Morgenthau*, 119 F.Supp.2d 346, 363 (S.D.N.Y. 2000) (internal quotation marks omitted).

Here, Levi again argues in his motion to dismiss that each cause of action fails for lack of personal involvement. However, his personal involvement in the conspiracy to violate Mr. Abdul-Matin's civil rights by using excessive force against him can be inferred by the actions he and other On-Scene Defendants took during and after the attack. First, DOCCS found that Levi and

another On-Scene Defendant instructed a third On-Scene Defendant to turn off his BWC in violation of DOCCS policy. Compl ¶ 103, 305-311. This overt act along with the apparent failure of multiple On-Scene Defendants to properly utilize their BWCs supports an inference that they agreed to act in concert and demonstrates consciousness of guilt, as do facts showing that, throughout the attack, the On-Scene Defendants operated under the pretext that Mr. Abdul-Matin had violated facility rules necessitating a strip frisk before he could be placed in disciplinary confinement in the SHU. Multiple On-Scene Defendants also undertook overt acts in manufacturing this narrative when they threatened to "take people out" on the morning of the incident, transported Mr. Abdul-Matin from the dorm to the SHU building, conducted a pretextual strip frisk during which they beat him, wrote a misbehavior report for which a disciplinary hearing was never held, and interrupted a facility nurse's attempt to interview him. Compl. ¶¶ 37, 47-48, 53-58, 67-68, 70, 73-74, 78-89, 92-93, 102-104. Pursuant to a later OSI investigation, Notices of Discipline were later issued to On-Scene Defendants who had not resigned or been suspended for failing to wear a BWC as required, failing to report the inappropriate use of force and lying when asked about the use of force, and instructing another On-Scene Defendant to turn off his BWC during a period when there were alleged to be multiple inappropriate uses of force.[2] Compl. ¶¶ 104-106. The fact of Levi's prosecution and conviction in the fatal attack on Mr. Nantwi under similar circumstances only two days later lends further support to the inference that he was personally involved in the conspiracy to violate Mr. Abdul-Matin's civil rights by using excessive force against him.

[2] In his motion to dismiss, Levi notes that the Bureau of Labor Relations ("BLR") found cause to issue a Notice of Discipline to only Officer Radley regarding their instruction to Officer Mack to turn off his BWC. What Levi neglects to mention is that his employment with DOCCS ended following his involvement in and subsequent prosecution for the killing of Mr. Nantwi. In light of this fact, the reasonable inference is that the BLR found cause to issue a Notice of Discipline to only Officer Radley because Levi was no longer employed by DOCCS.

As discussed in Section I(A), *supra*, the excessive force used by the On-Scene Defendants in the attack on Mr. Abdul-Matin served only to maliciously and sadistically cause harm and served no legitimate penological interest. Accordingly, the acts taken by the On-Scene Defendants to effectuate the use of force and subsequent cover up are acts "in concert to inflict an unconstitutional injury." These acts caused Mr. Abdul-Matin to suffer extreme emotional fear, excruciating pain, and serious bodily injury. Compl. ¶ 395.

Taken together and drawing all inferences in the light most favorable to Mr. Abdul-Matin, these facts—and, in particular, Levi's overt act of instructing another On-Scene Defendant to turn off his BWC in violation of DOCCS policy—demonstrate Levi's personal involvement in a conspiracy to use of excessive force against Mr. Abdul-Matin and to cover up misconduct by himself and the other On-Scene Defendants.

## CONCLUSION

For the foregoing reasons, Defendant Levi's motion to dismiss should be denied.

Dated: November 24, 2026
Albany, New York

PRISONERS' LEGAL SERVICES OF NEW YORK

By: ______________________________

Sara J. Jensen
50 Beaver Street, 5th Floor
Albany, NY 12207

Andrew Stecker
14 Lafayette Square, Suite 510
Buffalo, NY 14203

Hallie E. Mitnick
Megan Welch
114 Prospect Street
Ithaca, NY 14850

*Attorneys for Plaintiff*

**CERTIFICATE OF SERVICE**

I, Sara Jensen, an attorney, certify that on November 24, 2026, I caused a copy of Plaintiff's Memorandum of Law in Opposition to Defendant Levi's Motion to Dismiss to be served on all counsel of record via the CM/ECF system, and I caused a copy of the same, along with a copy of all cases cited therein that are unpublished or published exclusively on electronic databases, to be served on the *pro se* individual listed below:

Jonah Levi
DIN: 26-B-1911
Clinton Correctional Facility
PO Box 2001
Dannemora, NY 12929

Dated: November 24, 2026
Albany, New York

Sara J. Jensen